IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **THE CORVUS GROUP, INC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 12 C 1269 |
| **NICHOLS KASTER, PLLP, and ANDREW G. CHASE,** | ) ) ) |
| Defendants. | ) ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff The Corvus Group, Inc. ("Corvus" or "plaintiff") sued defendants Nichols Kaster, PLLP and Andrew G. Chase ("defendants") alleging trade libel (Count I) and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA") (Count II) and the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(8) ("UDTPA") (Count III). Defendants allege that "this lawsuit is a retaliation against a wage and hour law firm, Defendant Nichols Kaster, PLLP and one of its attorneys Andrew Chase for investigating the overtime practices of The Corvus Group, Inc." Mot. at 1. This lawsuit stems from letters sent by defendants to potential clients seeking information about Corvus. The letters at issue contained a statement that defendants "had information" that Corvus "may have failed to properly pay overtime to some of its employees." Defendants have filed a motion to dismiss, and also requested attorneys' fees and

costs.  The motion to dismiss is granted for all the reasons that follow.  However, to the extent defendants also argue that they are entitled to dismissal (and attorney's fees and costs) under the Illinois Citizen Participation Act, that argument lacks merit.

With respect to the trade libel/defamation claim, the letters at issue are absolutely privileged because they were sent as part of a pre-suit investigation of federal wage and hour claims.  In *Popp v. O'Neill*, the Illinois Appellate Court, citing the Restatement (Second) of Torts § 586 (1977), stated, "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."  730 N.E.2d 506, 510 (Ill. App. Ct. 2000).  The court went on to explicitly hold that attorneys enjoy an absolute privilege concerning any defamatory statements made by an attorney to a potential client during a preliminary legal conclusion.  In light of this, I reject plaintiff's attempt to argue that the privilege cannot apply here because there was no existing attorney-client relationship at the time the letters were sent.  In addition, I reject plaintiff's argument that the letters were not part of any "pre-trial investigation" because they were merely solicitations seeking to "stimulate further dialog toward a potential future relationship"

between the law firm and the addressees. It is clear that the letters were sent by defendants in an effort to locate additional plaintiffs for the wage and hour case that was ultimately filed in federal district court in Ohio. Thus, the statements made in these letters were pertinent to a possible future legal proceeding and are therefore absolutely privileged. *See Popp*, 730 N.E.2d at 511 ("[A]n attorney's defamatory statements to a potential client during a preliminary legal consultation [are protected] as long as the statements are pertinent to a possible future legal proceeding."); *Atkinson v. Affronti*, 861 N.E.2d 251 (Ill. App. Ct. 2006) ("[T]he absolute privilege which applies to defamatory statements made by an attorney during pending litigation applies to prelitigation defamatory statements made in written communications to a potential litigant.").

Next, the ICFA claim is dismissed because the ICFA does not apply to the letters sent by defendants. The Illinois Supreme Court has held that the ICFA does not apply to attorneys acting in their professional capacities. *See Cripe v. Leiter*, 184 Ill. 2d 185, 195, 198 (1998). Because attorneys are governed by state ethics rules, the ICFA does not apply to them. *Id*. at 198. I am not convinced by plaintiff's argument that the defendants "were not practicing law" because they were merely sending out letters to potential clients in anticipation of the filing of the complaint in Ohio. Certainly pre-trial investigation on the part of an attorney

3

is part of the practice of law. The Rule of Professional Conduct in Illinois (and in Minnesota) govern pre-suit investigations as well as solicitation letters that attorneys may send in their practice. Because the state Rules of Professional Conduct regulate these activities, plaintiff's ICFA claim is not viable under *Cripe*.

Turning to plaintiff's third and final claim, defendants argue that the UDTPA claim fails because the statements at issue do not disparage the quality of the plaintiff's goods or services. In response, plaintiff agreed to dismiss this claim because, according to plaintiff, defendants had ceased using the allegedly defamatory language in their solicitation letters. Plaintiff went on to say that so long as defendants confirmed that the language would not be used in the future, Count III would be dismissed voluntarily. Because defendants, in reply, did not address this issue (and did not confirm that the language would not used in the future) and instead argued this claim on the merits, I too will address the claim on the merits.

The goal of the UDTPA is to provide a remedy for disparagement of a product. *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 274 (7th Cir. 1983). So long as the statements at issue do not disparage the quality of the plaintiff's goods or services, no cause of action will lie under the UDTPA. *Allcare, Inc. v. Bork*, 531 N.E.2d 1033, 1037-38 (Ill. App. Ct. 1988). In this case, I cannot see how the statements at issue, that defendants "have

4

information" that Corvus "may have failed to properly pay overtime to some of its employees," in any way disparages the quality of Corvus's goods or services. This claim is dismissed.

Finally, defendants argue that this case should be dismissed, and attorney's fees and costs awarded, as a "SLAPP" lawsuit in violation of the Citizen Participation Act, 735 ILCS 110/1, *et seq*. ("CPA"). "SLAPPS, or 'Strategic Lawsuits Against Public Participation,' are lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Wright Development Group, LLC v. Walsh*, 939 N.E.2d 389 (Ill. 2010). "SLAPPS use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation." *Id*. at 396. The purpose of the CPA "is to give relief, including monetary relief, to citizens who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'act or acts' made 'in furtherance of the constitutional rights to petition, speech, association, and participation in government.'" *Sandholm v. Kuecker*, No. 111443, 2012 WL 169708 (Ill. Jan. 20, 2012) (quoting *Wright Dev. Group, LLC v. Walsh*, 238 Ill. 2d 620 (2010)).

The CPA applies where (1) the defendants' acts were in furtherance of their rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the plaintiff's claim is based on, related to, or in

5

response to the defendant's "acts in furtherance"; and (3) the plaintiff fails to produce clear and convincing evidence that the defendant's acts were *not* genuinely aimed at procuring favorable governmental action. *Hammons v. Society of Permanent Cosmetic*, 2012 WL 955314, at *3 (Ill. App. Ct. Mar. 20, 2012). The first requirement is met here. Defendants' actions in soliciting clients in anticipation of the filing of a lawsuit are protected under the First Amendment. *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, (1988); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (the right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances); *Hytel Group, Inc. v. Butler*, 938 N.E.2d 542 (Ill. App. Ct. 2010) (filing of a lawsuit based on unpaid wages was an exercise of right to petition for redress of grievances).[1]

However, defendants have not carried their burden in showing that this lawsuit was "based on, related to, or in response to" defendants' exercise of their First Amendment rights, and not merely to recover damages for any reputational injuries. In a recent Illinois Supreme Court case, the court construed the phrase "based on, related to, or in response to" to mean "*solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech,

---

[1] I reject plaintiff's argument that the letters were not protected under the First Amendment because they were "libelous." As explained above, plaintiff's claims are meritless.

6

association, or to otherwise participate in government." *Sandholm*, 2012 WL 169708, at *9 (quoting 735 ILCS 110/15). "Stated another way, where a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendants' rights of petition, speech, association, or participation in government. In that case, the suit would not be subject to dismissal under the Act." *Id*.

Defendants, in support of their argument that Corvus filed this lawsuit solely to chill their First Amendment rights, point to a letter sent by Corvus's counsel to defendants. In making their arguments, defendants cherry-pick language out of the letter in order to argue that Corvus "threatened [defendants] with meritless retaliatory litigation." Mot. at 14. However, when read in context, this letter does not support defendants' position. A close reading of the letter does not establish that Corvus filed this lawsuit *solely* to chill defendants' constitutional rights. Rather, the letter shows that Corvus had requested that defendants turn over the "information" referenced in the solicitation letters so that it could insure that it was complying with all applicable federal laws. Further, Corvus notified defendants that "[y]our failure to comply with this demand will force The Corvus Group to take such further legal action as it may deem necessary *in order to protect its business reputation and goodwill in the business*

7

*community.*" 8/22/11 Letter at 2. Thus, this letter supports the notion that this lawsuit was, at least in part, undertaken to protect Corvus' reputation and good will in the community. Because defendants have failed to put forward evidence that Corvus filed this lawsuit *solely* because of defendants' exercise of their First Amendment rights, the suit is not subject to dismissal under the CPA.

Finally, defendants request reimbursement for their fees and costs incurred in defending against the ICFA claim. The ICFA expressly allows a court, in its discretion, to award reasonable attorney's fees and costs to the prevailing party, which in the case of a prevailing defendant requires that the court make a threshold finding that the plaintiff acted in bad faith. 815 ILCS 505/10a(c). Given the clear holding of the Illinois Supreme Court in *Cripe*, I conclude that the ICFA claim was frivolous, and thus "not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). As a result, I will award defendants reasonable attorney's fees and costs associated with the ICFA claim. Defendants have seven (7) days from the date of this order to file their request, with supporting documentation. Plaintiff, if it chooses, may file any objections within five (5) days thereafter.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:    May 24, 2012